LEONARD N. HOLMBERG v. JERRY R. DEAN, et al.

1. REPLEVIN; *Gist of the Action; Under General Denial, What Defendant May Show.* In replevin, under the code, the wrongful detention is the gist of the action; and under a general denial, a defendant can show that he does not wrongfully detain the property in dispute, and to do this, he can show he rightfully detains the same.

2. FRAUDULENT ASSIGNMENT, *When May be Shown.* Where H., as assignee of one L., brings an action against D., a sheriff, to recover possession of goods seized upon legal process issued against L., and the petition alleges title and right of possession in H., under a deed of assignment from L. to H., and a wrongful detention of the goods by D., *held*, that the defendant may, under a general denial, introduce evidence of extrinsic circumstances to show the assignment is fraudulent and void.

3. ASSIGNEE, *When Not Error to Show his Insolvency and Dishonesty.* As tending to prove that a deed of assignment executed under the provisions of the assignment act of March 3d, 1868, is fraudulent and void,

in that it was executed with the intent to hinder, delay and defraud creditors, *held*, not error for the district court to receive evidence that at the time the assignment was made, the assignee was insolvent, and his character for honesty and fair dealing bad.

4. DEBTOR FULLY SOLVENT, *Not to Make Assignment, When.* The law does not permit a debtor, who believes himself fully solvent, and actually has resources of cash or property sufficient to satisfy all his creditors in full, to assign his property and thereby withdraw it from the reach of attachments and executions of creditors, with the motive thus to obtain a compromise, or to procure an extension of time, so as to save a larger surplus to himself.

### *Error from McPherson District Court.*

REPLEVIN, brought by *Leonard N. Holmberg*, as the assignee of *S. P.* Lindgren, against *Jerry R. Dean*, to recover a stock of merchandise by Lindgren assigned to *Holmberg* for the benefit of his creditors. At the September Term, 1875, of the district court, Gates & Kendall, Tootle & Hanna, R. L. Hawkins & Co., and F. M. James & Son, were made parties defendant in the above action. Trial at said term on the petition, and the general denial of defendants. Verdict and judgment for defendants. *Holmberg* moved for a new trial, which was refused, and he brings the case here.

*John Foster*, for plaintiff in error:

There is no allegation or claim in the issue upon which this action was tried that said deed of assignment was fraudulent. The maker of the deed of assignment, S. P. Lindgren, was not a party to the action. Can it be that in a plain action of replevin, where the answer is a general denial, the defendant can attack a deed of assignment for the benefit of creditors, without notice of any kind to the plaintiff? A deed of assignment, under our statutes, must be executed and acknowledged with as much formality as a deed of conveyance of real estate; and, in principle, it might as well be claimed, that in a case of replevin, with a general denial for answer, a deed of real estate, duly executed and recorded, may be attacked as fraudulent and swept out of existence, and this without the grantor being made a party, or the court being

asked to set aside such deed. No objection was made to the form or execution of said deed of assignment. We do not think this case comes within the rule laid down in *Wilson v. Fuller*, 9 Kas. 192.

Neither the plaintiff's character for "honesty and fair dealing," nor the charge of "having put his property out of his hands," nor his "solvency" or "insolvency," was in issue in this case; and we do not think, under our statute, it could be put in issue. The assignee, as in this case, gives a bond, which in the first instance must be approved by the clerk of the district court where the assignment is made, and must be approved by the district court at the next term held in the county thereafter, and any party interested may have the assignee removed and another appointed. In the case of *Angell v. Rosenbury*, 12 Mich. 241, a leading case holding testimony of the character of the assignee competent, the court state, as a reason for sustaining the ruling, that the assignee, under the law of that state, was not required to give any bond for the faithful performance of his duties.

"Evidence of the character either of the debtor or of the grantee is not admissible, for character is not directly put in issue by the nature of the controversy." (Bump on Fraudulent Conveyances, 552, and cases there cited.)

"Under the statute against fraudulent assignments, the question to be decided in a particular case is, the intent of the assignor in that transaction. The honesty or dishonesty of the assignee is not material." *Wilson v. Forsyth*, 24 Barb. (N. Y.) 105.

Fraudulent conversion of the property by the assignee, or the selection of an improper assignee made without any improper motive, may be a ground for removing the assignee and appointing a new one, but is no ground for setting aside the assignment. (*Cox v. Platt*, 32 Barb. 126; *Geurine v. Hunt*, 6 Minn. 375.)

*Against* reputation of *insolvency*, see 13 Ga. 408; 25 Ala. 139. *For*, see 18 Vt. 87; 4 Gray, 514.

The court, in the 8th division of the charge to the jury,

says: "And in the first place, who can make assignments? Persons in a solvent condition cannot make an assignment. It is only such persons as are in failing circumstances, and who cannot meet all their debts and liabilities — such as are insolvent — and it is for you to say whether or not Lindgren was in this condition at the time he made his assignment." We submit that this is not the law. *Savey v. Spaulding*, 8 (Clarke) Iowa, 239; *Ogden v. Peters*, 21 N. Y. 24; Bump on Fraudulent Conveyances, 372.

The word "insolvency" as used in the bankrupt act, and I believe as used in the Kansas assignment act, is simply an inability to pay debts as they mature and become due and payable, in the ordinary course of business, without reference to the amount of the debtor's property, and without reference to the possibility or probability or even certainty, that, at a future time, on the settlement and winding-up of all his affairs, his debts will be paid in full out of all his property. *Hardy v. Clark*, 3 Nat. Bankrupt Register, 385. Citing, *Boyle v. Scofield*, 1 Maule & Selwyn, 338; 4 Cushing, 127, 134; 3 Gray, 600; 4 Hill, 650, 657; 6 Allen, 331; *Merchants National Bank v. Truax*, 1 N. B. R. 545; *In re Gay*, 2 id. 358.

There is not one sign of fraud in this whole case. There was no attempt anywhere to cheat any creditor. The truth of this case is, that there was a stock of goods in a crude new county, far from railroad, which several parties were hungry for, and when Lindgren's interest in them had become dead by the assignment, they hover around the carcass, each greedy for the fat pickings.

*T. F. Garver*, for defendants in error:

Was the validity of the assignment in issue? The petition bases the alleged ownership of plaintiff upon the assignment to him, and he claims to be owner solely by reason of such assignment. The defendant in effect says, that the plaintiff is not the owner, because no valid assignment was ever made; and if there was no *valid* assignment, then in law there was

*no* assignment. The issue is thus definitely and expressly made right upon the fact of there being a valid assignment or not. This case is fully within the rule laid down in *Wilson v. Fuller*, 9 Kas. 176.

As a circumstance bearing upon the intent of the assignor, it was competent to show the known character of the chosen assignee. If a man should place his property in the charge of a disreputable character, and intrust the interests of his creditors to a man notoriously dishonest, the presumption might well arise that such a choice would not be made except to carry out an improper purpose. It will not do to say that the honesty or dishonesty of the assignee has nothing to do with the case, because he must give a bond for the faithful execution of the trust. Creditors are entitled to something more than the uncertain security of a bond, of no avail except as the result of a law suit. The word of an upright man is better than a score of bonded rogues. And an assignee who is honest enough to do right from principle, will have an eye to the interest of creditors, while a dishonest one will find a hundred ways to defraud, and a full stock of devices to evade liability on his bond. It never was the intention of the law that the bond should supply a lack of all virtue.

The reason for allowing evidence of the character of the assignee, is not founded upon the insecurity of the creditors, nor for the purpose of displacing him by a better man, but only because the fact of a debtor selecting an objectionable person, is a circumstance that naturally excites suspicion. If a bond is required, as is under our statute, the creditors have more protection — apparently, at least — than without a bond; but the improper selection is not therefore justified, nor the presumption of an improper motive for an improper act removed. Good faith must characterize every assignment.

A badge of fraud is the appointment of an objectionable person as assignee. (Burrill on Assignments, 67, 434; Bump on Fraudulent Conveyances, 377, and cases cited.) The citation of counsel for plaintiff, Bump on Fraudulent Conveyances, 552, we suggest is not applicable to assignments of this

kind, where the assignee sustains the character of trustee. The testimony was not to show and did not tend to prove that Holmberg was merely insolvent, but that he was dishonest, and because dishonest, had placed his property out of his hands, so as to be proof against all legal process. Dishonesty in such case has to be shown as a fact, and the mere opinion of witnesses cannot be taken. The witnesses gave the jury facts and circumstances, from which it might by them be found that a man guilty of such conduct was dishonest. The selection of an objectionable assignee could be pointed to as a badge of fraud only where the real character of the assignee was known to the assignor. Hence, it was proper to show the general reputation of the assignee for honesty and fair dealing, as tending to show knowledge on the part of the assignor. (*Angell v. Rosenbury*, 12 Mich. 241; *Sawyer v. Sauer*, 10 Kas. 471; 3 Gray, 594; 4 Gray, 113; 3 Allen, 32.)

Plaintiff in error complains of the eighth division of the charge, in which the jury were told that "Persons in a solvent condition cannot make an assignment." The charge of the court on this question of the insolvency of the assignor, we submit, is consonant to reason and authority. A man who is solvent and has property with which he can at once satisfy all his creditors in full, or out of which they can collect their claims by legal process, has no legal or moral right to place his property by an assignment beyond their reach, and thus delay a speedy collection of debts. Such an assignment might be for the benefit of the debtor, but we cannot conceive under what circumstances it could be for the benefit of the creditors. (Burrill on Assignments, 37, 40, and cases cited.)

Whatever may be the views of other courts upon this question, we presume that in this state the rule is settled. (*Seibert v. Thompson*, 8 Kas. 69; *Higby v. Ayres*, 14 Kas. 340.)

Counsel for plaintiff concludes his argument by a pathetic picture of the carcass of Lindgren's interest in a stock of goods, exposed "in a crude new county far from railroad,"

(and, we presume, far from home and friends,) around which hover "several parties" gaunt with hunger. It is such a picture as the minds of the old masters could catch nothing more than faint glimpses of. It arouses our deepest sympathies, and we should all, while regretting its untimely end, charitably accord to it a respectable burial, and over the whitened skeleton, bleached by the suns of three summers, mournfully add, *Requiescat in pace.*

The opinion of the court was delivered by

HORTON, C. J.: This was an action to recover the possession of certain goods alleged to be the property of the plaintiff, as assignee of S. P. Lindgren, under the provisions of the act regulating voluntary assignments for the benefit of creditors, approved March 3d, 1868, and alleged to have been wrongfully taken and detained by the defendant in error, J. R. Dean. The answer consisted of a general denial. On the trial the defendants introduced evidence that the goods were the property of Lindgren; that they had been seized under attachments and executions against him by Dean, as sheriff, and that the assignment to plaintiff in error was fraudulent and void. To the introduction of this evidence, the plaintiff objected, on the ground that the facts tending to prove bad faith and collusion between the parties had not been pleaded; and he now assigns the admission of this character of evidence as error. We do not think the point well taken. It is true that under the practice in many of the states a defendant cannot, under a general denial, introduce testimony that the plaintiff's title is fraudulent and void, but under our code the action of replevin is for the wrongful detention. THAT is the main question in issue. Under the general denial, the defendants could show that the plaintiff was not entitled to the immediate possession of the property, and this they could do by showing that the sheriff was entitled to the exclusive possession of the property. Under their general denial, they could show that the sheriff did not wrongfully

*Replevin; gist of the action; under general denial what may be shown.*

detain the property, and this they could do by showing that he *rightfully* detained it. If the deed of assignment was fraudulent and void, then the plaintiff had no claim or interest in the property and was not entitled to the possession thereof, as assignee. So, if this fact could be established by evidence of extrinsic circumstances, it fully disproved any wrongful detention on the part of Dean, and clearly proved that he rightfully detained the goods so held by him, on process against Lindgren. (*Leroy v. McConnell*, 8 Kas. 273; *Wilson v. Fuller*, 9 Kas. 176; *Bailey v. Bayne*, 20 Kas. 657; *Yandle v. Crane*, 13 Kas. 344.)

Another assignment of error is, that the court erred in permitting the defendants to assail the assignment as fraudulent, by offering evidence that the assignee was insolvent, and his character for honesty and fair dealing bad. This evidence was admissible. While the power to select and appoint his own assignee is one which our statute of 1868 allowed to every debtor contemplating a disposition of his property, this power is not to be exercised arbitrarily and without a proper reference to the interests of the creditors. Hence, if the assignee be so deficient in business capacity or standing, in pecuniary responsibility or character for integrity, that a prudent man, honestly looking to the interest of the creditors alone, would not likely select him as a proper person for the performance of the trust, then his selection will furnish an inference, more or less strong, according to the circumstances, that the assignor in making the selection was actuated by some other motive than the desire to promote the interest of creditors; in other words, an inference of intent to hinder, delay, or defraud his creditors. If the assignment was made with this intent, the transaction was fraudulent. (Burrill on Assignments, 66; *Angell v. Rosenbury*, 12 Mich. 241.)

*Assignee; when his insolvency and dishonesty may be shown.*

It is contended by counsel for the plaintiff that, as the assignee is required to execute a bond with securities, the doctrine above stated ought not to prevail in this state. In this case the assignment and all the proceedings had thereunder

took place prior to the adoption of the supplemental act of March 1st, 1876. (Laws of 1876, ch. 101, p. 202.) And the mere fact that the assignee is compelled to give a bond that he will faithfully execute the trust confined to him does not relieve the assignor from the exercise of prudence in making his selection. A bond is some protection, and perhaps the fact that the assignee is insolvent, if otherwise suitable and competent within our statute, might not be sufficient evidence to declare an assignment fraudulent; yet an action on a bond would be a very unsatisfactory way for a creditor to obtain his portion of a trust fund. Indeed, if a creditor knew or believed he would be compelled to resort to litigation with an assignee to recover the demands allowed him, he would be more apt to seek a compromise or assent to such a settlement as the debtor might choose to offer, than if he was assured from the responsibility and high character of the assignee that the trust would be promptly and honestly discharged. Under the supplemental act of 1876, which empowers the creditors to select an assignee and authorizes the judge of the district court to appoint a receiver to take and hold possession of the property assigned, where the assignee is not responsible for the amount of the property, the evidence so received, if not absolutely inadmissible, would have but little weight or force in proving an assignment fraudulent. Under the act prior to this amendment in 1876, the evidence was clearly competent.

Further assignment of error is alleged in the direction of the court, that persons in a solvent condition cannot make an assignment. As thus stated, the instruction was too general, and might have been misleading, had it not been limited, and explained by the court to the effect, "that if Lindgren, when the assignment was made, was in possession of means of any kind with which or out of which he could himself at once discharge all his liabilities in full, or out of which his creditors could collect all their debts by legal process, then he was not insolvent to that degree that would

warrant his making an assignment and preventing his creditors from collecting their debts by the ordinary process of law." In other words, the jury were directed, that "a debtor cannot lawfully husband his property through the medium of an assignment for his own benefit to the delay of his creditors." To prevent the abuse of the right, and avoid an

Debtor fully solvent, not to make assignment, when.

assignment being made a convenient engine of fraud, the law does not permit a debtor, who believing himself fully solvent, and actually having resources sufficient, either of cash or of property, to satisfy all his creditors in full, to assign his property, and thereby withdraw it from attachments and executions of creditors, with the motive to obtain a compromise, or to procure an extension of time so as to save a larger surplus to himself. As explained and limited, the direction of the court was not sufficiently prejudicial to the plaintiff to cause a reversal of the judgment.

As the jury returned special findings that the assignment of Lindgren to Holmberg was made with the intent to gain time, and to hinder and delay creditors; and when the assignment was made, that Lindgren had means and property, not exempt by law, sufficient to discharge all his liabilities in full, and out of which his creditors could have collected all their debts by legal process, the other instructions of the court, criticised by counsel, need not be commented upon, as they could not have injuriously affected the plaintiff.

We have examined all the other questions raised by counsel, but do not think any special comments are required thereon.

The judgment of the district court must be affirmed.

All the Justices concurring.