## T. R. JACKSON et al. v. S. H. GLAZE.

1. PROPERTY — *Purchase of Without Notice of Fraud by Vendor.* Where a party, without actual or constructive notice of fraud, purchases a stock of goods, paying therefor a reasonable price, such purchaser obtains a good title thereto, notwithstanding the party making the sale sold with the fraudulent intent to hinder and delay his creditors.

2. SAME—*Innocent Purchaser for Value.* Where the record shows that one of the questions in dispute in the trial of the cause below was whether or not a party purchasing a stock of goods had notice that the same were being sold to hinder, delay and defraud creditors, and where the court below found that the party purchasing had no knowledge of the intended fraud, this court will not reverse the judgment based on such finding.

3. REPLEVIN—*Damages.* There are two elements of damages which may be recovered in action in replevin. They may be, first, general damages which follow as a necessary result from the detention of the property; and second, special damages which are incident to a particular case. Damages which follow as a necessary result of the unlawful detention of the property, need not be specifically pleaded.

4. INTERPLEA—*Withdrawal.*   It is not error for the trial court to permit a party to withdraw an interplea.

*Error from the District Court of Canadian County.*

Action in replevin brought by S. H. Glaze, in the district court of Canadian county, against Thomas R. Jackson, E. L. Gay, and H. H. Cook, to recover a stock of merchandise seized by Cook as the property of one Charles Bartley.    Judgment in the lower court in favor of Glaze for the recovery of the possession of the property, finding the value thereof at $2,200.00 and damages for detention at $300.00.    On behalf of defendants below the case is brought to this court.    The opinion states the facts.    Affirmed.

*Blake & Blake* and *Ellis & Cook,* for plaintiffs in error.

*Dille & Schnook* and *C. H. Carswell,* for defendant in error.

The opinion of the court was delivered by

DALE, C. J.:   March 15, 1894, Samuel H. Glaze commenced an action in replevin in the district court of Canadian county, against Thomas R. Jackson, E. L. Gay and H. H. Cook, to recover possession of a stock of dry goods and notions.   The case was tried by the court and resulted in a judgment for Glaze for the return of the property, or its value, $2,200.00, and $300.00 as damages for the unlawful detention of the same.

Briefly stated, it appears that on March 9, 1894, Glaze purchased from one Charles Bartley a stock of dry goods, notions, etc., for the sum of $1,200 in cash, and immediately took possession of the same, and transferred the stock to another store room, where he, Glaze, was carrying on the business of a dry goods merchant.   The two stocks were intermingled and used by Glaze as one stock of goods, until March 14, when Cook, a judgment creditor of Bartley, caused an

execution to be levied upon the goods in the store room of Glaze. It was intended by Cook to have the execution run only upon goods which Glaze had purchased from Bartley; but some of the stock which Glaze was carrying prior to the time the Bartley stock was added was seized by the sheriff upon the execution. The indebtedness from Bartley to Cook arose as follows: In December, 1893, Bartley purchased from debtors of Cook a stock of goods, located in Texas, for the sum of $3,600, of which sum $1,000 was paid in cash, and $2,600 in notes given for the balance due upon such purchase. The first note, in the sum of $264.19, fell due March 3, 1894. After the purchase by Bartley of the stock of goods, he moved the same from Texas to El Reno, at which last named place he began doing business as a retail merchant, and so continued until he sold to Glaze on March 9. While Bartley was engaged in business, he sold at retail and wholesale from the stock, and made a few purchases of new goods so that, at the time of the purchase by Glaze, the actual worth of the stock was from fifteen hundred to two thousand five hundred dollars. The witnesses are at variance upon this question. Immediately after the sale of the stock from Bartley to Glaze, Cook brought suit upon his notes against Bartley, obtained judgment thereon, and, to satisfy the judgment against Bartley, caused the execution to be run upon the goods in possession of Glaze. Glaze, claiming ownership, replevined the goods, and made Jackson, the sheriff who levied the execution, and Gay, Jackson's deputy in charge of the goods, parties defendant with Cook. The defendants entered a general denial. While the suit was pending, Parrotte-Andrews Co., upon motion, was allowed to interplead, and, in their petition, alleged, in substance, that they were the owners of and entitled to the possession of a certain lot of goods, which they, as a wholesale company, had delivered to

Bartley; that such delivery was induced by fraud upon the part of Bartley; that they had accepted an order from Bartley for a certain bill of goods; that Bartley had accompanied such order with a statement of his financial condition, and, relying upon such statement, which was false, they had shipped to Bartley a bill of goods. But after discovering the fraud, they elected to rescind the sale, and take back their goods, which they claimed were a part of the stock received by Glaze from Bartley, and afterwards seized under the execution. After obtaining the leave and coming into the case in this manner, the interpleader was, by the court, over the objection of defendant, Cook, and shortly after the commencement of the trial, permitted to dismiss their cause of action and retire from the case. In the court below a jury was waived, and the case tried to the court. The court found Glaze to be the owner of the property and entitled to the possession thereof; that the property was of the value of $2,200, and that said property was wrongfully detained by defendants, and that, by reason of such wrongful detention, plaintiff had been damaged in the sum of $300. Upon such findings the court rendered a judgment "that the plaintiff do have and recover judgment against the said defendants for a recovery of the possession of the property described in the amended petition herein, and for the sum of three hundred dollars damages for the wrongful detention of said property, and the costs. And it is further adjudged by the court that the plaintiff have judgment against the defendants for the value of said property, to-wit, two thousand, two hundred dollars, in case delivery cannot be had."

The appellant asks a review of this case upon the following assignments of error:

1. Error in holding that Glaze obtained a good title in the goods purchased from Bartley.

2. In holding that Glaze was a purchaser, without notice of fraud upon the part of Bartley.

3. In awarding damages to Glaze in the sum of $300. for the detention of the goods.

4. In permitting a withdrawl of the interplea by Parrotte-Andrews Co.

I. The first assignment of error brings into discussion § 2662 of our statutes, which reads as follows:

"Every transfer of property, or change thereon made, every obligation incurred and every judicial proceedings taken, with intent to delay or defraud any creditor or other person of his demands, is void against all creditors in interest, and against any person upon whom the estate of the debtor devolves in trust for the benefit of others than the debtor."

We think that the evidence warrants a finding that Bartley sold to Glaze with the intent to hinder and delay his creditors. Under such state of facts it is contended that such fraud operates to defeat the transfer to Glaze, although Glaze may have purchased without knowledge or notice of such fraud. And the section of our statute above quoted is relied upon in support of such contention. Numerous cases are cited in support of this doctrine, but a careful reading of the same does not support the claim of counsel. In the cases to which our attention is called, it will be noticed that the property purchased is not disturbed when found in the hands of an innocent purchaser, but the money or the property paid or exchanged to the fraudulent vendor, may be followed and subjected to attachment or execution. But nowhere do the courts permit a creditor of a vendor who has transferred for an adequate consideration to a person without notice or knowledge of the fraud, to pursue the property into the hands of such innocent vendee. Our statute is from Dakota, and in *Shauer v. Alterton*, 151 U. S. 607, appears a case which went up from the

supreme court of South Dakota, wherein the statute under consideration received judicial construction adverse to that contended for by counsel for appellant, and which we believe to be in harmony with the decisions of the courts of this country upon this question.

II. One of the questions before the lower court and upon which the court below must have passed, was whether or not Glaze knew at the time of his purchase from Bartley that Bartley was selling the goods with the fraudulent intent to hinder and delay his creditors. And the finding of the court below upon such disputed question must stand, unless under the evidence it may be said that, as a matter of law, Glaze had such notice or knowledge of Bartley's fraud as made him privy to it. This is the contention of counsel for appellant, and in that view we have examined the record. The stock of goods purchased by Glaze for $1,200, was worth from $1,500 to $2,500. Glaze testified that he thought, when he bought, he was getting about $1,500 worth of goods. Other witnesses claim that the goods were worth a much greater sum. Under the evidence in this case we are unable to find with certainty the value of the goods. There was conflicting evidence before the trial court. The judgment finding that the value of the goods was in the sum of $2,200 does not aid us in determining the value of the goods purchased by Glaze from Bartley, because under the execution goods were seized which were not a part of the Bartley stock. Glaze testified that the sheriff seized, in addition to the Bartley stock, goods to the value of about $1,000, and all of the witnesses testified that some goods other than those belonging to such stock were taken. Under such circumstances we cannot find affirmatively that Glaze knew at the time of the purchase that he was getting the goods at a price greatly below their real value. Glaze first heard of the opportunity

to purchase the stock upon the morning he made the purchase; he was advised that the stock could be purchased cheaply. He inquired of Bartley whether or not there was any debts against the property and was advised that there was but one, a chattel mortgage to a bank at El Reno, in the sum of $224. Glaze was in the store but about one hour, examining the stock before purchasing. He inquired of the man who first spoke to him about purchasing the goods if everything was all right, and if Bartley owed any money except to the bank and was advised that he thought he did not. Under these circumstances Glaze bought, and it is contended that, under our law, he had notice of Bartley's intended fraud, and was, therefore, a party to such fraud. That he should have inquired further of Bartley or of the clerk in the store of Bartley, or should have asked to examine the bills and accounts of Bartley to determine the truthfulness of Bartley's statements relative to his financial condition. If Bartley was intending to defraud his creditors he would have told a falsehood, if Glaze had made the inquiry of him, and it would have been an unusual thing for a man going into a store to buy a stock of goods to inquire of a clerk about the financial standing or business integrity of his employer, and we are not advised how an examination of Bartley's bills and accounts would have enlightened Glaze as to Bartley's integrity.

The law does not expect or ask of a man that he do those things not usually done by honest men in their dealings with each other. The law of constructive notice (it is not claimed that any actual notice was had) requires the proof of such facts and circumstances as are sufficient to put a prudent man upon inquiry. A man purchasing is nor bound to be overly suspicious or inquisitive. He may presume that he is dealing with an honest man, and not until some sus-

picious circumstances arise in the transaction, that is, something appears that is not reconcilable with ordinary business integrity, is a person bound to stop and inquire. Measured by this rule, which we deem a fair one, under our statute, what do we find ? Glaze purchased for $1,200 what was worth from $1,500 to $2,500. He made such purchase after he had satisfied himself that he was getting $1,500 worth of goods. Was the price so wholly inadequate as to excite suspicion? That is questionable. In this territory, business ventures are frequently experiments. Men come here with stocks of goods, do not find conditions pleasurable, and sell at a great reduction, in order to close out and leave. A sale of goods in an old and well settled community which would excite suspicion there, would be regarded as a common occurence here. The inquiry as to debts, both from Bartley and of the man who suggested the purchase, seems ample in that respect. The length of time required in the purchase of the goods may or may not be material. Some men act quickly when their judgment prompts them, and whether or not a speedy purchase is a badge of fraud would depend upon the circumstances surrounding a particular transaction. In short, after an examination of the entire testimony, we conclude that there is not, in the evidence, sufficient upon which to predicate a conclusion of law that Glaze purchased the goods from Bartley with notice of the latter's fraudulent intent to cheat, hinder or delay the creditors of Bartley.

III. In an action of replevin, the plaintiff can recover damages which follow as a necessary result of the use of the property, or, if he has been specifically injured, he may plead such injury and recover therefor. In the case under consideration, the plaintiff alleged, generally, that he had been damaged in the sum of $1,000 for which, in addition to the property in dispute,

he asked judgment. The court below rendered a judgment for the return of the property and $300 damages for the unlawful detention thereof. And in case a return of the property could not be had, a money judgment in the sum of $2,200. As we take it, the court below intended to render a judgment as damages in the sum of $300 providing the goods were returned. In case the goods were not returned, no damages should be recovered, but the sum of $2,200 should be the full amount of plaintiff's recovery. Under our statutes "judgment for the plaintiff may be for the possession or for the recovery of possession or the value thereof, in case a delivery cannot be had, and damages for the detention." (Sec. 186, ch. 66.)

In this case, the judgment being for the recovery of possession, it was proper, if supported by proof, to render such judgment as would recompense Glaze for. the detention of the goods. If, on the other hand, the goods cannot be recovered, the judgment is for their value. If the goods are not returned, payment of the sum of $2,200 will satisfy the judgment. This construction of the verdict would seem to be in harmony with the statutes. In this case, however, if the plaintiff below had demanded it, we think he was entitled to recover interest upon the money judgment, as that appears to be the rule in Kansas, from which state our statute comes. (*Palmer v. Meiners*, 17 Kan. 478, and cases therein cited.) As we view the verdict and evidence in this case, the defendant below has the option to return the property, together with $300, damages for its unlawful detention, or he may pay the sum of $2,200, and, in either case, the judgment will be satisfied. We think the evidence sufficient to sustain such a verdict.

IV. At the trial below, Parrotte-Andrews Co. were permitted, over the objection of plaintiff in error, to withdraw their interplea, and we are asked to reverse

this case upon that ground.   We fail to see how such action prejudiced the rights of plaintiff in error. Under the law, the defendants at the trial could have interposed, under their general denial, any defense which may have been offered by Parrotte-Andrews Co. (*Halmberg v. Drau*, 21 Kan. 73.)   But, in any event, we do not understand that the court could have compelled Parrotte-Andrews Co. to proceed, if such party desired to withdraw.   The court might have rendered a judgment against Parrotte-Andrews Co., or, if such company should again desire to litigate the questions raised in their interplea, the question of their right to prosecute their suit can then be determined.

The judgment of the lower court is affirmed.

Burford, J., having presided at the trial below, not sitting; all the other Justices concurring.